## MUSCOGEE (CREEK) NATION DEPARTMENT OF HEALTH

**PROFESSIONAL SERVICES AGREEMENT**
(Emergency Department Services)

This Professional Services Agreement ("Agreement") is entered into as of August 30 2019 ("Effective Date"), by and between the **MUSCOGEE (CREEK) NATION DEPARTMENT OF HEALTH** (the "Nation"), and **GREEN COUNTRY EMERGENCY PHYSICIANS OF TULSA, PLLC** ("GCEP"). The Nation and GCEP are each a "Party" and collectively the "Parties".

A. The Nation is a sovereign nation and enjoys the full privileges of a sovereign's immunity from suit, as recognized by Congress and the United States Supreme Court. Execution of this Agreement shall not be construed to be a waiver of sovereign immunity, and neither shall any clause herein or addendum or attachment hereto be construed to effectuate the consent to suit, and the Nation expressly declines to waive sovereign immunity.

B. The Nation wishes to enter into an agreement with GCEP for GCEP to provide emergency department services for the Nation at its healthcare facilities in Okmulgee and Okemah. The Nation has established an emergency department program ("**ED Program**") at the Sites of Service identified in this Agreement.

C. GCEP affirms that it operates in accordance with the laws of the State of Oklahoma and the Internal Revenue Service, and is qualified, willing, and able to perform the services set forth in this Agreement.

The Parties agree as follows:

1. **PERFORMANCE REQUIREMENTS OF GCEP:**

   (a) GCEP shall provide Services to the Nation at the Muscogee (Creek) Nation Medical Center in Okmulgee, OK ("**Okmulgee Hospital**"), and the Okemah Creek Nation Community Hospital in Okemah, OK ("**Okemah Hospital**"), as described on **Attachment "A"**. The Okmulgee Hospital and Okemah Hospital are each a "**Site of Service**" and collectively the "**Sites of Service**".

   (b) GCEP will assure that neither GCEP nor any GCEP Provider who provides Services to the Nation under this Agreement are currently listed on the List of Excluded Individuals and Entities ("**LEIE**"). GCEP shall notify the Nation within 5 calendar days of determining that GCEP or any Provider who provides Services to the Nation under this Agreement is listed on the LEIE and immediately remove the individual from performing Services upon request by the Nation.

   (c) GCEP will be responsible for all professional and administrative expenses incurred by GCEP in rendering the Services, except as otherwise specified in this Agreement.

2. **PERFORMANCE REQUIREMENTS OF THE NATION:**

   (a) During the Term, the Nation will continuously make available to GCEP at the Nation's sole expense all reasonable facilities, support services, qualified nursing and other personnel, equipment and supplies necessary to enable GCEP and its Providers to perform the Services, duties and responsibilities of GCEP set forth in this Agreement.

   (b) The Nation will provide GCEP with office space at each Site of Service to conduct the administrative and patient care affairs of the ED Program at each Site of Service.

PLAINTIFF'S EXHIBIT 1

3.  **BILLING & ASSIGNMENT:** In exchange for the compensation specified in Section 4, GCEP and its Providers hereby assign to the Nation the exclusive right to bill and collect from patients and third-party payors for professional services rendered by GCEP or any applicable Provider under this Agreement, in accordance with applicable state and federal law and third-party payor contracts. Billing and collection for GCEP patient care components of the Services shall be administered solely by the Nation with GCEP providing an assignment of benefits to facilitate claims submission by the Nation and direct receipt by the Nation of income attributable to these components of GCEP Services. The Nation will have exclusive responsibility for the billing and collection activities and will indemnify and hold GCEP and its providers fully harmless from all liability associated with the Nation's performance of claims submission and collection activities. The Nation will provide to GCEP by the 15th of each month (reporting in arrears) billing level reports for professional services rendered in the Emergency Department. This Section shall survive the termination of this Agreement.

4.  **COMPENSATION:**

    (a) In consideration for the Services provided by GCEP under this Agreement, the Nation shall compensate GCEP as set forth on **Attachment "A"**.

    (b) GCEP shall submit invoices and time records to the Nation on a monthly basis for Services provided in the preceding month. GCEP's invoices and time records shall collectively include a description of Services provided, dates, Providers performing the Services, and amounts due. The Nation shall pay GCEP's invoice within 30 days of the date GCEP delivers its invoice and time records to the Nation (delivery may be electronic transmission, facsimile transmission or hand delivery); provided, however, to the extent any portions of an invoice are disputed by the Nation, the Nation shall pay any undisputed portions and shall work with GCEP to resolve any dispute within a total of 30 days from the date of GCEP delivery of the invoice and if not resolved GCEP may terminate this Agreement pursuant to Section 8(c) without necessity of additional cure period and pursue its remedies with respect to the payment dispute. Only twice within any 12-month consecutive period of time will late payment by the Nation be excused by GCEP, so long as the payment due is received within 5 days of the due date. GCEP shall maintain records of the Providers utilized to provide coverage, which records shall be made available to the Nation upon reasonable request.

    (c) No less than 90 days prior to each anniversary of the Services Commencement Date the Parties will engage and complete conversations intended to reach agreement in writing on modifications for next year compensation and coverage, and each Party reserves its right to deliver notice of its intent not to renew and extend this Agreement.

5.  **TAXES:** The Nation will provide GCEP with an IRS Form 1099 or other form reasonably necessary to enable GCEP to identify income received from the Nation and pay any taxes owed, as applicable. The Nation shall have no responsibility for calculating, paying or withholding any taxes or benefits on behalf of GCEP or any Provider.

6.  **STATUS OF THE PARTIES:** GCEP is an independent contractor of the Nation and vice versa. Nothing in this Agreement shall be construed to create a partnership, joint venture or employment relationship between the Parties. The Nation is interested only in the results of GCEP's Services and shall not control the means or methods by which GCEP's Services are rendered. GCEP is not eligible for any federal, Social Security, State Workers' Compensation or Unemployment Benefits from the Nation by virtue of payment(s) received and shall be responsible for all federal and state taxes related to payments received from the Nation under this Agreement.

7.  **TERM:** GCEP shall begin providing Services on the later of **November 1, 2019 at 7:00 AM**, or the date that GCEP Providers are both properly qualified to provide Services as set forth in Section 1 of **Attachment "A"** and credentialed by all third-party payors agreed to by the Parties ("**Services Commencement Date**"). This Agreement's initial term shall be for 1 year starting on the Services Commencement Date ("**Initial**

Term"), and, thereafter, this Agreement will automatically extend for additional periods of one year (each an "Extension Period") upon the same terms of this Agreement until this Agreement is terminated. The "Term" is inclusive of the Initial Term and any Extension Period.

8. **TERMINATION:**

(a) **Termination without Cause.** Except as provided for in this Section 8 or in Attachment "A", neither Party may terminate this Agreement without cause prior to the first anniversary of the Services Commencement Date. Either Party shall have the right to terminate this Agreement at any time on or after the first anniversary of the Services Commencement Date, by providing written notice to the other Party at least 90 days prior to the termination date.

(b) **Termination by Agreement.** The Parties may terminate this Agreement at any time by written evidence of their mutual Agreement to terminate. Termination by agreement shall be effective on the date designated by the Parties, and shall contain the terms specified by the Parties.

(c) **Termination with Cause.**

(i) **Termination by the Nation with Cause.** In the event that GCEP fails to meet its obligations under this Agreement, the Nation shall give GCEP written notice to cure the alleged defect in the performance of its obligations under this Agreement. The notice shall specify the obligation that GCEP is failing to meet. If, at the end of the 30-day period following the giving of the notice, the Nation is not reasonably satisfied that such defect has been cured, the Nation may give GCEP written notice of termination under this Section which termination shall be effective as of the date of such notice.

(ii) **Termination by GCEP with Cause.** In the event that the Nation fails to meet its obligations under this Agreement, GCEP may give the Nation written notice to cure the alleged default in the performance of its obligations under this Agreement. The notice shall specify the obligation that the Nation is failing to meet. If at the end of the 30-day period following the giving of the notice, GCEP is not reasonably satisfied that the default has been cured, GCEP may give the Nation written notice of termination under this Section which termination shall be effective as of the date of the notice.

(d) **Effect of Termination.** If this Agreement is terminated for any reason, GCEP shall only be entitled to receive the compensation set forth in Section 4 for the Services rendered through the effective date of termination. Upon termination of this Agreement, GCEP shall reimburse the Nation for any amounts paid in excess of the compensation owed for actual Services provided during the final month in which Services were provided.

(e) **Limitation on Subsequent Arrangements.** If this Agreement is terminated during the first year of the Initial Term, the Parties shall not enter into the same or similar arrangement until after the expiration of the period that would have comprised the first year of the Initial Term.

9. **NON-SOLICITATION:** During the Term and for a period of 12 months following the termination of this Agreement, each Party shall not, directly or indirectly, solicit a relationship with, induce or attempt to induce or hire any employee or healthcare service provider under contract with the other Party. To the extent not otherwise restricted as a matter of patient choice, this non-solicitation and non-hire covenant is also extended by the Parties to prohibit solicitation by GCEP of patients of the Nation to terminate his or her relationship with the Nation. Each Party may seek injunctive relief to enforce its rights under this Section. This Section shall survive the termination of this Agreement.

10. **CONFIDENTIALITY:**

(a) GCEP is responsible for ensuring that each Provider timely maintains or causes to be maintained accurate and complete records and files of all information pertaining to her/his provision of Services. The Nation, GCEP and each Provider shall safeguard and maintain the confidentiality of all patient records, charts and information in accordance with all applicable federal, state, and tribal confidentiality laws and regulations, including without limitation the Privacy, Security and Breach Notification rules promulgated under the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**") and the Health Information Technology for Economic and Clinical Health Act of 2009 ("**HITECH**").

(b) The Nation and GCEP shall take all reasonable steps and do all things reasonably necessary to insure that information regarding the terms of this Agreement or relating to patients and to the business of either Party acquired by virtue of the position of the other Party under this Agreement shall not be disclosed or used outside of the business of either Party; provided, however, the foregoing shall not apply to information (a) provided to government agencies or entities or third-party payers as required by applicable law or consented to by the patient; (b) furnished to other healthcare providers involved in a particular patient's care; (c) which is or becomes public knowledge through no fault of either Party; or (d) which is otherwise required to be disclosed by applicable law.

11. **LAWS AND REGULATIONS:** Each Party's performance under this Agreement shall comply with all applicable laws, ordinances, rules, and regulations of any governmental agency having jurisdiction and shall pay any fine, penalty, loss, damage, or expense resulting from its failure to comply therewith.

12. **DEBARMENT, SUSPENSION, PROPOSED DEBARMENT, AND OTHER RESPONSIBILITY MATTERS:** Each Party certifies to the best of its knowledge and belief that it (and GCEP certifies to the best of its knowledge and belief that its Provider(s)) is not presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any federal, state, local, or tribal agency. Each Party also certifies to the best of its knowledge and belief that it has not, within a three-year-period preceding this Agreement, been convicted of or had a civil judgment rendered against it for: commission of a fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (federal, state, local, or tribal) contract or subcontract; violation of federal or state antitrust statutes relating to submission of offers or commissions or embezzlement, theft, forgery, bribery, falsifications or destruction of records, and/or making false statements; and is not presently indicted for, or otherwise criminally or civilly charged by a governmental entity with, commission of any of the offenses enumerated in this provision. Each Party certifies it has not within a three-year period preceding this Agreement, had one or more contracts terminated for default by a federal, state, local, or tribal agency.

13. **COMPLIANCE WITH ANTI-KICKBACK AND STARK REQUIREMENTS:** Notwithstanding any unanticipated effect of any of the provisions of this Agreement, the Parties intend to comply with the "Anti-Kickback" statute (42 U.S.C. §1320a 7b(b)), the "Stark" law (42 U.S.C. §1395nn) and any other applicable law governing fraud and abuse or self-referrals under the Medicare or Medicaid programs, or any other federal or state healthcare program, as the provisions may be amended from time to time. The Parties further intend that this Agreement comply with applicable Anti-Kickback safe harbors and Stark exceptions, including: (a) the "personal services and management contracts" safe harbor (42 C.F.R. § 1001.952(d)); (b) the "personal service arrangements" exception (42 U.S.C. § 1395nn(e)(3) and 42 C.F.R. § 411.357(d)); and (c) the "fair market value compensation" exception (42 C.F.R. § 411.357(l)). This Agreement shall be construed in a manner consistent with compliance with the foregoing statutes and regulations, and the Parties agree to take all actions as are reasonably appropriate to construe and administer this Agreement consistent therewith. The Parties acknowledge that the compensation paid hereunder shall be solely for services provided under this Agreement and shall be fair market value for the services in an arm's length transaction consistent with the value of similar services in the community. In the event a court or administrative agency of competent jurisdiction, or GCEP upon advice of legal counsel, determines that this Agreement violates any such statutes or regulations, or that

the compensation hereunder exceeds fair market value compensation for purposes of any law governing fraud and abuse, provider self-referrals or tax-exempt entities, then the Parties agree to take actions as are necessary to amend this Agreement to comply with the applicable statutes and regulations, as provided herein.

14. **ACCESS TO CONTRACTS, BOOKS, DOCUMENTS AND RECORDS**: Until the expiration of four years after the furnishing of Services pursuant to this Agreement, GCEP and the Nation, and their agents and employees, shall make available upon written request to the Secretary of Health and Human Services, or upon request to the Comptroller General, or any of their duly authorized representatives, this Agreement and books, documents, and records of GCEP and the Nation that are necessary to certify the nature and extent of the costs of the Services rendered.

15. **OTHER ARRANGEMENTS**: For purposes of compliance with fraud and abuse and provider self-referral laws and regulations, including without limitation 42 C.F.R. § 411.357(d), all other arrangements between the Nation (or any affiliated entity) and GCEP are as follows: None.

16. **INSURANCE**: GCEP and all Providers who provide Services shall maintain malpractice insurance with minimum amounts not less than One Million Dollars ($1,000,000) per occurrence and Three Million Dollars ($3,000,000) in the aggregate throughout the Term. Upon reasonable request of the Nation from time to time, GCEP shall furnish the Nation proof of adequate insurance.

17. **GOVERNING LAWS AND CONFLICT OF LAW**: This Agreement shall be governed by, construed, and enforced in accordance with the laws of the Muscogee (Creek) Nation and where applicable, federal law. If it should appear that any of this Agreement's terms are in conflict with any rule of law or statutory provision of the Muscogee (Creek) Nation, or where applicable, with any federal rule of law or statutory provision the conflicting term(s) shall be deemed inoperative and null and void insofar as it may be in conflict with such rule of law or statutory provision, and shall be deemed modified to conform to such rule of law or provision. However, such conflict shall not operate to nullify or void the entire Agreement. Additionally, Jurisdiction and Venue for any action hereunder shall be proper only in the tribal courts of the Muscogee (Creek) Nation.

18. **FTCA PROTECTIONS**: Nothing in this Agreement is intended to affect or diminish the protections afforded to the Nation and its employees, agents, and/or representatives under the Federal Tort Claims Act as extended to Indian tribes pursuant to P.L. 93-638, as amended, and/or other laws of the United States.

19. **MISCELLANEOUS**:

(a) **Assignment.** No Party may assign any of its rights or delegate any of its duties without written consent of the other Party.

(b) **Integration and Waiver.** This Agreement contains the complete expression of the Parties' agreement with respect to the subject matter hereof, and shall bind the Parties, their successors and assigns. There are no previous or contemporary understandings, representations, or warranties not set forth herein. No subsequent amendment or modification of this Agreement shall be of any force or effect unless in writing and signed by the Parties to be bound thereby. No provision of this Agreement shall be considered waived by either Party unless the waiver is in writing and signed by the waiving Party. No waiver shall be a waiver of any past or future default, breach, or modification of any of the provisions of this Agreement unless expressly stipulated in the waiver. The Parties further state to the best of their knowledge, no employee of the Nation who exercises any functions or responsibilities in connection with the performance hereunder has any personal interest, direct or indirect, in this Agreement. This Agreement shall supersede any and all written or oral statements, agreements, and/or representations of the Parties made prior to or contemporaneously with the execution hereof. The Parties agree their respective performances hereunder shall be governed by an obligation of good faith.

(c)     **Notice.** Any notice required or permitted by this Agreement shall be effective if delivered in writing either: in person or by email to the president or similar officer of a Party, or via the U.S. mail, postage prepaid and return receipt requested, addressed to the Party at the address set forth below (or to such other address as is specified by the Party by like notice):

| | |
|---|---|
| To the Nation: | Muscogee (Creek) Nation Department of Health<br>Attention: Secretary of Health<br>1212 S. Belmont<br>P.O. BOX 400<br>Okmulgee, OK 74447 |
| To GCEP: | Green Country Emergency Physicians of Tulsa, PLLC<br>Attention: President<br>1145 S Utica Ave, Suite 365<br>Tulsa, OK 74104 |

(d)     **Counterparts.** This Agreement may be executed in counterparts, each of which will be deemed to be an original, but all of which, taken together, will constitute one and the same agreement. Execution by facsimile, by scanned attachments, or by electronic signature has the same force and effect as an original.

*[Signature Page Follows]*

This Professional Services Agreement is agreed to by the Parties as of the Effective Date.

**GREEN COUNTRY EMERGENCY PHYSICIANS OF TULSA, PLLC:**

By: _____    _____9/16/19_____
    Jeff Dixon, M.D., President    Date

**MUSCOGEE (CREEK) NATION DEPARTMENT OF HEALTH:**

By: _____    _____9/18/19_____
    Shawn Terry, Secretary of Health    Date

## Attachment "A"

### Services and Compensation

1. **Providers:** All physicians used by GCEP to provide Services (each a "**Physician**") must: (a) hold an unrestricted license to practice medicine in Oklahoma; (b) possess the knowledge, skill and experience to provide Services; (c) be an active member in good standing of the Nation's organized medical staff that is applicable to the Sites of Service; (d) maintain the clinical privileges necessary to provide Services to patients at the Sites of Service; (e) maintain current registrations to prescribe controlled substances with the U.S. Drug Enforcement Administration, the Oklahoma Bureau of Narcotics and Dangerous Drugs and all other applicable state agencies; and (f) be enrolled as a Medicare provider and eligible to participate in federally funded healthcare programs, including without limitation Medicare and Medicaid.

   All mid-level practitioners used by GCEP to provide Services (each a "**Practitioner**") must: (a) hold an unrestricted Oklahoma license to provide healthcare services as an Advanced Practice Registered Nurse (APRN), a Physician Assistant (PA), or other mid-level practitioner (approved by the Nation) in Oklahoma; (b) possess the knowledge, skill and experience to provide Services; (c) maintain the clinical privileges necessary to provide Services to patients at each Site of Service in which Practitioner provides Services; and (d) be enrolled as a Medicare provider and eligible to participate in federally funded healthcare programs, including without limitation, Medicare and Medicaid. The Physicians and Practitioners are each a "**Provider**" and collectively the "**Providers**".

   GCEP will arrange for qualified GCEP Providers (approved by the Nation) to provide the Services. GCEP will use a Physician and supervised Practitioner staffing model.

2. **Services:** The Nation engages GCEP to provide the following services ("**Services**"): (a) on-site emergency department services and related administrative services ("**Emergency Department Services**" or "**ED Services**"), (b) hospitalist (internal medicine) call coverage ("**Hospitalist Call Coverage**"), and (c) medical directorship of the Nation's ED Program ("**Medical Director Services**"), as set forth below:

   a. **ED Services:** *Okmulgee*: GCEP will provide one Physician with emergency department training and experience to provide ED Services coverage at the Okmulgee Hospital for 7 shifts per week, with each shift being 24 hours per day (each a "**Physician Dayshift**"), for 52 weeks per year. GCEP will provide one Practitioner to provide ED Services coverage at the Okmulgee Hospital for 4 shifts per week, with each shift averaging 10 hours per day (each a "**Practitioner Dayshift**"), for 52 weeks per year. ED Services at the Okmulgee Hospital shall include standard coverage of the emergency department 24 hours per day and Fasttrack coverage from 12:00 PM to 10:00 PM each day.

   *Okemah*: GCEP will provide one Physician with emergency department training and experience to provide ED Services coverage at the Okemah Hospital for 7 Physician Dayshifts per week, for 52 weeks per year.

Each Physician Dayshift will be approximately from 7:00 AM on one day to 7:00 AM the following day. GCEP may use more than one Physician to cover each Physician Dayshift.

GCEP will provide ED Services on site, not via telemedicine.

The coverage schedule for ED Services ("**Emergency Department Coverage Schedule**") will be mutually established in advance by GCEP upon consultation with the Nation. Any changes to the Emergency Department Coverage Schedule will be made by mutual agreement. The Nation shall be responsible to arrange its own coverage for this specialty service at times when no GCEP Provider is scheduled as the provider at a Site of Service. Neither GCEP nor any Provider has any duty to provide ED Services to the Nation outside the agreed Emergency Department Coverage Schedule absent a request by the Nation and the mutual consent in writing of both GCEP and Provider to perform the additional Services.

b. **Hospitalist Call Coverage:**

*Okmulgee*: GCEP will provide one Physician with emergency department and/or hospitalist (internal medicine) training and experience to provide Hospitalist Call Coverage at the Okmulgee Hospital for 7 shifts per week, with each shift averaging 12 hours per day (each a "**Hospitalist Call Coverage Shift**"), for 52 weeks per year.

*Okemah*: GCEP will provide one Physician with emergency department training and experience to provide Hospitalist Call Coverage at the Okemah Hospital for 7 Hospitalist Call Coverage Shifts per week, for 52 weeks per year.

Each Hospitalist Call Coverage Shift will be approximately from 7:00 PM to 7:00 AM. The coverage schedule for Hospitalist Call Coverage ("**Hospitalist Coverage Schedule**") will be mutually established in advance by GCEP upon consultation with the Nation. Any changes to the Hospitalist Coverage Schedule will be made by mutual agreement. Neither GCEP nor any Provider has any duty to provide Hospitalist Call Coverage to the Nation outside the agreed Hospitalist Coverage Schedule absent a request by the Nation and the mutual consent in writing of both GCEP and Provider to perform the additional Services.

For new-patient admissions during Hospitalist Call Coverage, the GCEP Physician will stabilize the patient and write the admission order.

GCEP will collaborate with the Nation's provider of hospitalist dayshift services at the Sites of Service (Regional Brain Institute PLLC ("**RBI**")) to coordinate the provision of after-hours 7:00 PM to 7:00 AM patient care consultation and monitoring at the Okmulgee Hospital and the Okemah Hospital related to GCEP's Hospitalist Call Coverage. This will involve patient-transition conferences each day at 7:00 AM and at 7:00 PM attended by GCEP Physician, RBI physician, hospital PA/APRN, CT technician (at 7:00 AM only), ED charge nurse, inpatient charge nurse, and case management designee.

c. **Medical Director**

| | | |
|---|---|---|
| | Services: | The Nation desires to ensure effective supervision of its ED Program and has determined it needs a physician to provide medical director services. GCEP will provide an GCEP Physician to perform medical director services for the Nation's ED Program in accordance with the terms and conditions of this Agreement and with the applicable bylaws, rules and regulations of the Sites of Service ("**ED Program Medical Director**"). One GCEP Physician may act as ED Program Medical Director of all the Sites of Service. The ED Program Medical Director(s) will be selected by GCEP and subject to consent not unreasonably withheld by the Nation. The ED Program Medical Director may delegate and utilize the services of an Associate Medical Director to share responsibility for the ED Program Medical Director duties from time to time. The ED Program Medical Director will report to the Nation's Hospital Administrator and Chief Medical Officer. The ED Program Medical Director shall be generally responsible for the supervision and administration of the clinical functions and activities of the ED Program, and his/her duties shall include, without limitation, the following: |

   i. Supervise the clinical operation of the Service;

   ii. Attend regular meetings of the Medical Executive Committee, Emergency Services Committee (Chair), Emergency Services Quality Improvement Committee (Chair), etc.;

   iii. Serve as liaison between the ED Program Providers, Site of Service administration, and ED Program support staff;

   iv. Proctor new appointees;

   v. Conduct ongoing practice evaluations of credentialed providers;

   vi. Institute/Participate in ED Program and Site of Service quality initiatives;

   vii. Develop/monitor standards of patient care for the ED Program;

   viii. Ensuring timely completion of ED Program medical records and charts;

   ix. Receive and resolve ED Program patient complaints;

   x. Ensure proper scheduling and training of ED Program providers;

   xi. Serve as mentor to new ED Program providers; and

   xii. Engage in other activities agreed to by the Parties.

3. **Compensation:**

   a. **ED Services:** The Nation shall pay GCEP $5,952 per Physician Dayshift (i.e., $248 per hour) per Site of Service. The Physician Dayshift rate shall increase annually by $96 (i.e., an increase of $4 per hour), with each increase starting on the anniversary of the Services Commencement Date.

|   |   |   |
|---|---|---|
|   |   | The Nation shall pay GCEP $1,090 per Practitioner Dayshift (i.e., $109 per hour) per Site of Service. The Practitioner Dayshift rate shall increase annually by $10 (i.e., an increase of $1 per hour), with each increase starting on the anniversary of the Services Commencement Date. |
| b. | Hospitalist Call Coverage: | The Nation shall pay GCEP $240 per Hospitalist Call Coverage Shift (i.e., $20 per hour) per Site of Service. The Hospitalist Call Coverage Shift rate shall increase annually by $6 (i.e., an increase of $0.50 per hour), with each increase starting on the anniversary of the Services Commencement Date. |
| c. | Medical Director Services: | In consideration of GCEP's performance of Medical Director Services, covering 2 Sites of Service, the Nation shall pay GCEP $5,000 per month. |